

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **LANIKA BROWN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **7:19-cv-08033-LSC** |
| | ) | **7:17-cr-00493-LSC-JEO** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OF OPINION

### I.    Introduction

Pursuant to 28 U.S.C. § 2255 ("§ 2255"), Lanika Brown ("Petitioner" or "Brown") filed with the Clerk of this Court a motion to vacate, set aside, or otherwise correct her sentence of twenty-four months' imprisonment. (Doc. 1.) The United States responded in opposition to the motion. (Doc. 6.) For the reasons set forth below, Brown's § 2255 motion is due to be DENIED and the present action DISMISSED WITH PREJUDICE.

### II.    Background

#### A.    Charges and Sentencing

On October 27, 2017, the Government charged Brown and her sister, Lashan Brown, with one count of conspiracy to defraud the United States in violation of 18

U.S.C. § 371. (Cr. Doc. 1.)[1] On November 8, 2017, Mr. J. Alan Baty ("Mr. Baty") entered a Notice of Appearance as Brown's counsel. (Cr. Doc. 13.) In accordance with a plea agreement,[2] Brown pleaded guilty to the charge. (Cr. Doc. 64.) In exchange for Brown's guilty plea, the Government agreed to recommend (1) an offense level reduction; (2) a sentence at the lower end of the guidelines range; and (3) supervised release following Brown's term of imprisonment as decided by the Court. (Cr. Doc. 3 at 6.) This Court accepted Brown's guilty plea following a plea colloquy on January 11, 2018. (Cr. Doc. 64 at 1, 13–14.)

The presentencing investigation report ("PSR") stated that Brown's sentencing guidelines range was thirty-seven months' to forty-six months' imprisonment and one to three years of supervised release with a statutory maximum of five years' imprisonment and three years of supervised release. (Cr. Doc. 31 at 18 (sealed).) The PSR also noted that, as a result of Brown's guilty plea, a three-point downward departure from the base offense level was appropriate for acceptance of responsibility. (*Id.* at 8–9.) However, the PSR also applied a two-point offense level enhancement pursuant to U.S.S.G. § 2T1.4(b)(1)(B) because Brown was in the business of preparing tax returns. (*Id.* at 9.)

---

[1] "Cr. Doc." refers to an entry on the docket sheet in the underlying criminal case, *United States v. Brown*, No. 7:17-cr-00493-LSC-JEO.
[2] (Cr. Doc. 3.)

Brown filed a written objection to the PSR's application of the two-point enhancement. (Cr. Doc. 24 at 3–8.) The Government responded in support of the enhancement[3] and provided additional support at the sentencing hearing through the testimony of an Internal Revenue Service ("IRS") employee. (Cr. Doc. 65 at 4–36.) After hearing both parties' arguments and the IRS employee's testimony, this Court overruled Brown's objection to the two-level enhancement. (Cr. Doc. 65 at 36.)

The Government complied with its obligations under the plea agreement by recommending that this Court adopt the findings in the PSR[4] (including the two-point offense level reduction and supervised release following Brown's term of imprisonment) and impose a sentence at the lower end of the guidelines range. (*Id.* at 36, 56.) Specifically, the Government recommended that this Court impose upon Brown a term of twenty-four months' imprisonment. (*Id.* at 56.) This Court then adopted the PSR's factual statements[5] and accordingly imposed a sentence of twenty-four months' imprisonment followed by three years of supervised release. (*Id.* at 53, 57.) On May 17, 2018, this Court entered judgment against Brown. (Cr. Doc. 35 at 1–3.)

---

[3] (Cr. Doc. 26.)
[4] The Government noted that the PSR required some corrections. (Cr. Doc. 65 at 36.) This Court made the necessary changes before adopting the PSR's factual findings. (*Id.* at 53.) This Court further noted that the changes did not affect Brown's sentencing guidelines range. (*Id.*)
[5] *See supra* note 4.

### B.     § 2255 Proceedings

On August 27, 2019, Brown executed the present motion, and the Clerk of this Court entered the motion into the record on September 3, 2019.[6] (Doc. 1.) Liberally construing the claims in Brown's § 2255 petition,[7] she alleges ineffective assistance of counsel and makes two substantive claims: (1) that this Court erroneously applied the two-point offense level enhancement based on an incorrect calculation of loss, and (2) that this Court "lacked subject matter jurisdiction and was barred from entertaining and awarding restitution under [18 U.S.C. § 3663A]." (Doc. 1 at 1–2.)

## III.    Timeliness and Non-Successiveness of Brown's § 2255 Motion

Brown is bringing her first § 2255 motion, so it is not "second or successive" within the meaning of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. §§ 2255(h), 2244(b)(3)(A).

Brown did not appeal her sentence. Therefore, Brown's conviction and sentence became final on May 31, 2018, fourteen days after this Court entered judgment against her. *See Adams v. United States*, 173 F.3d 1339, 1342 n.2 (11th Cir. 1999) ("[W]here a defendant does not pursue a direct appeal, the conviction

---

[6] Applying the "mailbox rule," the Eleventh Circuit deems a prisoner's § 2255 motion as filed upon the "date that [s]he delivered it to prison authorities for mailing, presumptively, . . . the day that [s]he signed it." *Jones v. United States*, 304 F.3d 1035, 1038 n.7 (11th Cir. 2002) (per curiam).
[7] Because Brown is a *pro se* litigant, this Court liberally construes her pleadings. *See Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

becomes final when the time expires for filing a direct appeal."); FED. R. APP. P. 4(b)(1)(A) ("In a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."). Under § 2255(f)(1), the deadline for Brown to file a § 2255 motion was May 31, 2019. 28 U.S.C. §2255(f)(1); *see also Downs v. McNeil*, 520 F.3d 1311, 1318 ("[T]he [statutory] limitations period [for postconviction relief] expires on the anniversary of the date it began to run.").

Brown signed the present motion on August 27, 2019, nearly three months after the expiration of the statutory period. (*See* doc. 1 at 1.) Brown made no showing that she is entitled to equitable tolling of the one-year statute of limitations. *See Downs*, 520 F.3d at 1318 (stating that equitable tolling is only available "in extreme cases where failure to invoke the principles of equity would lead to unacceptably unjust outcomes"). For that reason, Brown's motion is time-barred pursuant to § 2255(f).[8] Even if Brown's motion was timely, however, her claims nonetheless fail on the merits for the reasons set forth below.

## IV.    Standard of Review

---

[8] If Petitioner believes that there exists a legal basis exists for finding her petition timely, she may assert such an argument in a Motion for Reconsideration within ten (10) days of the entry of this Memorandum of Opinion.

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to 28 U.S.C. § 2255 are limited. A petitioner is entitled to relief under § 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (quoting *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988)).

In litigation stemming from a § 2255 motion, "[a] hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations. Nor is a hearing required where the [movant's] allegations are affirmatively contradicted by the record." *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (quoting *Guerra v. United States*, 588 F.2d 519, 520–21 (5th Cir. 1979)). However, an evidentiary hearing is appropriate if, "accept[ing] all of the petitioner's alleged facts as true," the movant has "allege[d] facts which, if proven,

would entitle him to relief." *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (quoting *Agan v. Dugger*, 835 F.2d 1337, 1338 (11th Cir. 1987) and *Futch v. Dugger*, 874 F.2d 1483, 1485 (11th Cir. 1989)).

## V.    Discussion

### A.    Ineffective Assistance of Counsel

Brown first claims that her counsel, Mr. Baty, rendered ineffective assistance by providing her misinformation in order "to induce her to plead guilty." (Doc. 1 at 1.) This assertion is meritless and due for dismissal without a hearing.

Claims of ineffective assistance of counsel may be raised for the first time in a § 2255 motion and are therefore not subject to procedural bar for failure to raise them on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). An ineffective assistance of counsel claim has two components: first, the petitioner "must show that the counsel's performance was deficient;" second, the petitioner "must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the first component, the petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second component is satisfied only when the defendant shows that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

In examining counsel's performance, the Court should be "highly deferential." *Id.* at 689. The Court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* The Court must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.*; *see Bell v. Cone*, 535 U.S. 685, 702 (2002) (holding that "tactical decision[s] about which competent lawyers might disagree" do not qualify as objectively unreasonable). A petitioner who seeks to overcome this presumption does not carry her burden by offering bare accusations and complaints; rather, she "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.

Where a petitioner fails to show that her counsel's performance fell below an objective standard of reasonableness, the court need not address the issue of prejudice. *See Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000). Where the court does consider this prong, the petitioner must show that counsel's errors were prejudicial and "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. A petitioner meets this burden by establishing by a reasonable probability that the outcome of the proceeding would have been

different but for counsel's errors. *Williams v. Taylor*, 529 U.S. 362, 391–93 (2000); *Strickland*, 466 U.S. at 691.

To establish prejudice in the context of a guilty plea, a movant must establish that, but for her counsel's unprofessional errors, "[s]he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 53, 59 (1985). In the guilty plea context, there is a strong presumption that an attorney's actions are reasonable. *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345, 1348–49 (11th Cir. 2015). "We recognize that in deciding whether to enter a plea, defense lawyers carefully balance both 'opportunities and risks' without fully knowing the strength of the [prosecution's] case. Therefore, we must, as we do for all *Strickland* claims, afford 'substantial deference' to a lawyer's strategic choices." *Id.* (citing *Premo v. Moore*, 562 U.S. 115, 124 (2011)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. The defendant must show "that no competent counsel would have taken the action that [her] counsel did take." *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).

Brown fails to allege a sufficient factual basis for finding Mr. Baty's performance ineffective. To warrant an evidentiary hearing on claims of ineffective assistance of counsel, a petitioner must allege specific facts that, if true, would entitle her to relief. *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990). A petitioner has no right to an evidentiary hearing when "[her] claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible.'" *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)); *see also Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient.") (quoting *United States v. Lawson*, 947 F.2d 849, 853 (7th Cir. 1991)); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (holding that "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" "cannot be the basis for finding counsel ineffective"). Brown summarily asserts that her guilty plea was neither knowing nor voluntary because she relied on "misinformation" from Mr. Baty in making it. (Doc. 1 at 1.) However, Brown provides no factual basis whatsoever for her claim of deficient performance, nor does she identify what alleged misinformation Mr. Baty gave her that induced her to plead guilty.

Moreover, the record plainly demonstrates that Brown's decision to accept the plea deal was well informed and of her own volition. During the plea colloquy,

this Court discussed and questioned Brown with respect to, *inter alia*, the Guilty Plea Advice of Rights Certification, the information and Brown's right to wait for a Grand Jury indictment, Brown's right to plead not guilty and to have a jury trial, the Government's burden of proof for each element of the charge, and the consequences of pleading guilty, including the rights Brown waived by doing so. (Cr. Doc. 64 at 3–9.) At each step, the Court asked Brown whether she understood, and she answered affirmatively in each instance. (*Id.*) This Court further addressed Brown's statutory and sentencing guidelines ranges through the following exchange:

> THE COURT: Let's talk about the ranges of punishment. There [are] two ranges of punishment: The sentencing guideline range and the statutory range. I assume your lawyer has talked to you about both of those?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: I want you to know that he may have the guideline range right; he may not. Nobody can tell you what your guideline range will end up being until I have your sentencing hearing and I rule on what comes in and what doesn't.
>
> Do you understand me?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: If your guideline range is different than what he told you in the end, it will just be different. It will not be a reason to set aside your guilty plea.
>
> Do you understand?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 9–10.) This Court then stated Brown's statutory range of punishment. (*Id.* at 10.) Afterwards, this Court asked Brown if she had questions regarding any matter the Court had discussed thus far, to which Brown responded in the negative. (*Id.*)

This Court then turned to Brown's plea agreement with the Government, confirming her understanding thereof through the following exchange:

> THE COURT: Plea agreements are permitted but you have to disclose the existence of the agreement as well as the terms and conditions of it. Your lawyer has filed a document with the Court called plea agreement; he is showing you a copy of it. Looks like to me it's got your initials in the bottom corner of each page.
>      Are those your initials?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: When you signed it there on page five, were you acknowledging, stipulating, and agreeing that the factual basis that precedes your signature [is] true and I should rely upon it?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Turn to page eight. Is that your signature?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: When you signed it on page eight, were you recognizing or acknowledging that you had waived or given up your right to appeal or file a post conviction petition there above your signature?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Then on page 14, is that your signature?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Does this document state all of the agreements you have with the Government?

THE DEFENDANT: Yes, sir.

THE COURT: Has anybody threatened you, forced you, or coerced you into getting you to plead guilty?

THE DEFENDANT: No, sir.

THE COURT: You understand you have a right to plead not guilty even though you have signed all these documents?

THE DEFENDANT: Yes, sir.

(*Id.* at 11–12.) Though Brown fails to identify what alleged misinformation she relied upon in pleading guilty, her discussion with this Court throughout the plea colloquy was sufficiently thorough to refute any such contention. Furthermore, Brown offers no evidence, nor does she even allege, that her statements during the plea colloquy were false. *See United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the colloquy are true.") (citing *United States v. Gonzalez-Mercado*, 808 F.2d 796, 799–800 n.8 (11th Cir. 1987)). Accordingly, Brown's claim of ineffective assistance of counsel lacks merit.

## B.    Substantive Claims

Brown asserts two substantive claims. First, she alleges that this Court erred in calculating her sentencing guidelines range. (Doc. 1 at 1–2.) Additionally, Brown argues that this Court lacked subject matter jurisdiction to award restitution under 18 U.S.C. § 3663A. (*Id.*) Both of Brown's substantive claims fail for the reasons explained below.

1.    **Brown's Claim That This Court Erred in Calculating Her Sentencing Guidelines Range is Procedurally Defaulted.**

A petitioner cannot raise a challenge to her conviction or sentence in a § 2255 motion if she did not raise the same challenge on direct appeal. *Nguyen v. United States*, 420 F. App'x 875, 877 (11th Cir. 2011). Brown did not file a direct appeal and thus raised none of the substantive claims that she now brings before this Court. However, "[a] defendant may overcome this procedural default by showing both cause for [her] default as well as demonstrating actual prejudice suffered as a result of the alleged error." *Black v. United States*, 373 F.3d 1140, 1142 (11th Cir. 2004); *see also, e.g., Bousley v. United States*, 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice' or that [s]he is 'actually innocent.'") (citations omitted).

Brown merely makes a conclusory allegation that this Court's application of the two-point offense level enhancement was "erroneous and incorrect." (Doc. 1 at 2.) However, she makes no attempt to show either cause for her failure to file a direct appeal or any actual prejudice resulting from the alleged error. In other words, Brown fails to demonstrate any factual basis supporting the finding of a reasonable

probability that, had she raised the issue on direct appeal, the Eleventh Circuit would have ruled in her favor.

Additionally, Brown waived all non-jurisdictional defects in the proceedings when she entered into the plea agreement. *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) ("A guilty plea, since it admits all elements of a formal criminal charge, waives all non-jurisdictional defects in the proceedings against a defendant.") (quoting *United States v. Fairchild*, 803 F.2d 1121, 1124 (11th Cir. 1986)). Brown's claim with respect to the statutory sentence enhancement is thus procedurally barred from review.

Furthermore, Brown's plea agreement included an appeal waiver whereby Brown forfeited her right to appeal her conviction or sentence for any reason, with three specific exceptions in the event that (1) this Court imposed a sentence in excess of the statutory maximum; (2) this Court imposed a sentence in excess of the guideline sentencing range; or (3) Brown received ineffective assistance of counsel. (Cr. Doc. 3 at 7–8.)

Appeal waivers are enforceable agreements. *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999). "A plea agreement is, in essence, a contract between the Government and a criminal defendant. Among the considerations that a defendant may offer as part of such a contract is waiver of [her] right to appeal, provided that

the waiver is made knowingly and voluntarily." *Id.* When the district court questions the defendant regarding the appeal waiver and the defendant affirms her assent thereto and understanding thereof, the defendant knowingly and voluntarily waives her right to appeal. *See id.* at 1168 ("In this case, Howle's waiver was clearly knowing and voluntary — he was specifically questioned by the district court regarding the waiver of his right to appeal."); *United States v. Buchanan*, 131 F.3d 1005, 1008 (11th Cir. 1997) ("[A]ppeal waivers are valid if knowingly and voluntarily entered. To ensure that that [is] the case, we require that the district court specifically question the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, unless it is otherwise clear from the record that the defendant understood the significance of the waiver."). Once a district court accepts a plea agreement with an appeal waiver, "the plea agreement must stand as written," and reviewing courts should not address the merits of appeals violative of such waivers. *Howle*, 166 F.3d at 1169.

This Court confirmed Brown's understanding of the appeal waiver during the plea colloquy through the following exchange:

THE COURT: Turn to page eight. Is that your signature?

THE DEFENDANT: Yes, sir.

THE COURT: When you signed it on page eight, were you recognizing or acknowledging that you had waived or given up your right to appeal or file a post conviction petition there above your signature?

THE DEFENDANT: Yes, sir.

(Cr. Doc. 64 at 11–12.) This Court also repeatedly confirmed that Brown was entering into the plea agreement of her own volition. (*See id.*) Brown's appeal waiver was plainly knowing and voluntary. Accordingly, this Court accepted the plea agreement in full. (*Id.* at 13–14.)

Moreover, Brown's sentence was well below the statutory maximum. (*See* cr. doc. 35 at 2); *see also* 18 U.S.C. § 371 (stating that a conviction thereunder carries a maximum sentence of five years' imprisonment). In fact, Brown's sentence of twenty-four months' imprisonment was below even the *minimum* sentence with respect to the advisory guidelines range. (*See* cr. doc. 65 at 56–57; cr. doc. 31 at 8–9, 18 (sealed).). *See also* U.S.S.G. §§ 2T1.9(a)(1), 2T1.4(a)(1), 2T4.1. This Court has already addressed Brown's ineffective assistance of counsel claim. Brown's argument regarding the statutory enhancement does not fall within one of the enumerated exceptions of the plea agreement. As a result, Brown's plea agreement bars the claim from review.

## 2.     This Court Had Subject Matter Jurisdiction to Award Restitution.

The basis for Brown's claim that this Court lacked subject matter jurisdiction to award restitution in her case is unclear. As an initial matter, Brown waived her right to challenge this Court's calculation of restitution by failing to raise the issue at

her sentencing hearing or on appeal. *See United States v. Cordell*, 524 F. App'x 584, 587 (11th Cir. 2013) (stating that "[a]n appellant abandons an issue where he fails to develop any argument on the issue in his initial appeal brief" and noting that the court could decline to address the petitioner's argument regarding subject matter jurisdiction because his opening brief "merely list[ed] . . . jurisdictional claims without further discussion or analysis"). Moreover, "absent exceptional circumstances[,] . . . a criminal defendant who fails to object to the calculation of restitution at both [sentencing and again on direct appeal] loses the right to advance a challenge to this calculation." *Cani v. United States*, 331 F.3d 1210, 1215 (11th Cir. 2003). Brown did not object to the calculation of restitution at the sentencing hearing,[9] nor did she raise the issue on appeal. Therefore, Brown waived her right to challenge this Court's determination as to restitution.

Notwithstanding Brown's abandonment of the erroneous restitution issue, however, her claim that this Court lacked jurisdiction to order restitution nonetheless fails. "[J]urisdictional error 'can never be waived by parties to litigation' because it 'implicates a court's power to adjudicate the matter before it.'" *Brown*, 752 F.3d at 1347 (quoting *United States v. Peter*, 310 F.3d 709, 712 (11th Cir. 2002)).

---

[9] Brown did object to the calculation of tax loss as applied to her base offense level (*see* cr. doc. 31-1 at 2 (sealed)), but she did not object to the calculation of loss with respect to this Court's consideration thereof for purposes of ordering restitution.

Brown thus did not waive her jurisdictional claim by failing to file a direct appeal. Even so, this Court had full authority to order restitution in Brown's case. "A district court's authority to order restitution is conferred by statute." *Cordell*, 524 F. App'x at 588. Under the Mandatory Victim Restitution Act ("MVRA"), a district court must "order a defendant to pay full restitution if [s]he is convicted of an offense in which an identifiable victim has suffered a pecuniary loss." *Id.*; 18 U.S.C. §§ 3663A(a)(1), (c)(1)(B). A "victim" is an entity that suffered a harm as a direct and proximate result of the defendant's commission of the offense. *Cordell*, 524 F. App'x at 588; 18 U.S.C. §§ 3663A(a)(1), (c)(1)(B). The Government must "establish the amount of a victim's loss by a preponderance of the evidence." *Cordell*, 524 F. App'x at 588.

Brown fails to allege any facts in support of her argument that this Court erred in calculation of restitution. The Government charged Brown with violating 18 U.S.C. § 371, which is an offense against the United States. This Court therefore enjoyed incontrovertible subject matter jurisdiction over Brown's case. *See* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."). Furthermore, Brown stipulated to the total amount of loss as part of her plea agreement. (Cr. Doc. 3 at 5.) She then confirmed her

acknowledgment, stipulation, and agreement to the factual basis of the plea agreement, including the loss calculation, during the plea colloquy. (Cr. Doc. 64 at 11.) Brown does not even allege that her statements during the plea colloquy were false. *See Medlock*, 12 F.3d at 187. Consequently, Brown fails to provide any basis for her argument that this Court erroneously ordered restitution.

## VI.    Conclusion

For the foregoing reasons, Brown's § 2255 motion to vacate, set aside, or correct her sentence is hereby DENIED and this action DISMISSED with prejudice.

Rule 11 of the Rules Governing § 2255 Proceedings requires the Court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. *See* Rule 11, Rules Governing § 2255 Proceedings. This Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a "petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." *Miller-EL v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack*, 529 U.S. at 484). This Court finds that Brown's claims do not satisfy either standard.

A separate order consistent with this opinion will be entered.

**DONE** AND **ORDERED** ON SEPTEMBER 28, 2022.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

211913